IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**



F I L E D

JAN 2 6 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

LILIANA C. VITULLO, *et al.*, )
    **Plaintiffs,** )
         )
      **v.** )        **No. 1:09cv614**
         )
**DANIEL J. MANCINI, d/b/a Mancini** )
**& Associates, *et al.*,** )
    **Defendants.** )

## MEMORANDUM OPINION

Threshold motions to dismiss this Fair Debt Collection Practices Act ("FDCPA")[1] case

present the following questions:

> (i) whether, under 15 U.S.C. § 1692g(a), a debt collector must send the debtor a
> second written notice containing *all* of the information enumerated in the statute
> within five days of the parties' initial communication where, as here, the initial
> communication contained some—but not all—of the required items of
> information;

> (ii) whether an allegedly false statement that a party is in default with respect to a
> note is misleading under 15 U.S.C. § 1692e, even though the party knows he did
> not sign the note or the deed of trust as to which he is allegedly in default; and

> (iii) whether a debt collector violates the FDCPA's "cease communications"
> provisions in 15 U.S.C. § 1692c where, as here, the debt collector sends a
> communication, as required by state law, directly to a debtor known to be
> represented by an attorney.

Also at issue is defendant's Rule 72(a) motion objecting to the U.S. Magistrate Judge's decision

to grant the original plaintiff's Rule 15 motion to amend the first amended complaint to add a

new plaintiff and six Counts.

---

[1] 15 U.S.C. §§ 1692-1692p (2006).

-1-

The parties, by counsel, fully briefed and argued these matters, and for the reasons that follow, the motions to dismiss are granted in part and denied in part, and the objection to the Magistrate Judge's decision is overruled.

I.[2]

Plaintiffs Liliana and Julio Vitullo are residents of Virginia. According to the second amended complaint, Liliana Vitullo, but not Julio Vitullo, is the owner of a property located on River Road in Capon Bridge, West Virginia. On October 4, 2006, Liliana Vitullo signed a deed of trust and note secured by the Capon Bridge property. Julio Vitullo signed neither the deed of trust nor the note. The current beneficiary of the deed of trust is IndyMac Bank F.S.B. ("IndyMac"), not a party to this action. The second amended complaint alleges that the current noteholder is defendant Green Tree Servicing, LLC ("Green Tree"), a Delaware limited liability company with its principal place of business in Minnesota.

Defendant Daniel J. Mancini is an attorney who maintains a law firm named Mancini & Associates in Pennsylvania. Mancini & Associates regularly collects, or attempts to collect, debts. On June 2, 2008, Mancini sent a letter to Liliana Vitullo entitled "Pre-Foreclosure/Right to Cure." Specifically, the letter stated that Liliana Vitullo was in default on the loan secured by the Capon Bridge property under a deed of trust, and that she had the right to cure the default by

---

[2] The facts stated herein are derived from plaintiffs' second amended complaint and are assumed to be true for the purpose of considering Mancini's motions to dismiss. *See Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001). Also properly considered are the documents referenced by the second amended complaint that are essential to plaintiffs' claims, as their authenticity is not disputed. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (holding that "a court may consider [a document submitted by a defendant] in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity").

paying $9,191.24. The letter also stated:

> Please be advised that you have thirty (30) days after receipt of this notice to dispute the validity of this debt, or any portion thereof, otherwise the debt will assume to be [sic] valid. If you notice [sic] this office, in writing, within thirty (30) days that the debt or any portion thereof, is disputed we will obtain verification of the debt and a copy of such verification will be mailed to you. If you notify this office, in writing, and make the request within the thirty (30) day period you will be provided with the name and address of the original creditor, if not already provided and, which, as you know, is different from the current creditor.

Sec. Am. Compl. Ex. A. On June 16, 2008, Mancini sent an identical letter to Julio Vitullo.[3]

On June 20, 2008, Liliana Vitullo's counsel sent Mancini a letter disputing the debt and requesting the name of the original lender. The letter also (i) demanded that Mancini immediately "cease and desist from any further attempts (including communications of any sort) to collect this debt from my client"; (ii) referred Mancini to the FDCPA "to determine what communications are permitted following a demand by a debtor to cease communications"; and (iii) noted that Mancini is "not excused from sending any communication required by law." Def.'s Br. in Supp. of Mot. to Dismiss Ex. 2. Liliana Vitullo did not receive a response verifying the debt or providing the original creditor's name and address. By letter dated August 29, 2008, Mancini sent to Liliana Vitullo, not her counsel, a notice of acceleration and intent to foreclose and sell the Capon Bridge property at public auction on September 22, 2008, unless default was cured. Thereafter, Mancini foreclosed on the property on September 22, 2008.

Liliana Vitullo filed the original complaint on June 1, 2009, alleging various violations of the FDCPA solely against Mancini. Specifically, Counts I-VIII pled violations of certain FDCPA

---

[3] Although the letter is addressed to "Alejandro Vitullo," this plaintiff apparently also uses the name "Julio Vitullo," and the action is styled accordingly.

provisions and Count IX sought a declaratory judgment with respect to the foreclosure's alleged invalidity. Before service of a responsive pleading, Liliana Vitullo, on October 19, 2009, filed an amended complaint as a matter of right[4] adding Green Tree as defendant with respect to the declaratory judgment action pled in Count IX. On November 3, 2009, Mancini filed a motion to dismiss Counts I-V and VII of the first amended complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., and a motion to dismiss Count IX pursuant to Rule 12(b)(7), Fed. R. Civ. P. In her brief in response, Liliana Vitullo conceded that she had no rights arising out of the June 16, 2008 letter addressed to Julio Vitullo, the subject of Count V of the original and first amended complaints, and accordingly sought leave to amend Count V pursuant to Rule 15(c), Fed. R. Civ. P., to add Julio Vitullo as plaintiff and to allege additional Counts. In addition, Liliana Vitullo sought leave to amend Count IX of the first amended complaint by removing Mancini as defendant. A Magistrate Judge granted the motion to amend, and accordingly Liliana and Julio Vitullo filed a second amended complaint on December 13, 2009.

Plaintiffs' second amended complaint names two defendants—Mancini and Green Tree—and contains fourteen Counts, all of which allege violations of the FDCPA arising out of defendants' attempt to collect the debt secured by the Capon Bridge property. Counts I-XIII name only Mancini as defendant. More precisely, Counts I-IV allege that the June 2, 2008 letter sent to Liliana Vitullo did not contain information enumerated in 15 U.S.C. § 1692g(a)(2)-(5) regarding the debt and her rights to dispute the debt, and therefore Mancini violated the FDCPA when he failed to send a second written communication within five days providing this

---

[4] *See* Rule 15(a)(1), Fed. R. Civ. P. ("A party may amend its pleading once as a matter of course . . . (A) before being served with a responding pleading.").

information. Likewise, Counts V-VIII plead identical FDCPA violations with respect to the June

16, 2008 letter sent to Julio Vitullo. Counts IX and X also relate to the June 16, 2008 letter, but

allege that the letter contained false statements, in violation of 15 U.S.C. § 1692e. Finally with

respect to Mancini, Counts XI-XIII concern the notice of acceleration and foreclosure sent to

Liliana Vitullo on August 29, 2008, and the foreclosure proceeding. The final Count, Count

XIV, is solely against Green Tree and seeks a declaratory judgment invalidating the September

22, 2008 foreclosure of Liliana Vitullo's Capon Bridge property. In the motions at bar, Mancini

(i) moves for reconsideration of the Magistrate Judge's decision to allow the filing of the second

amended complaint, and (ii) seeks dismissal of Counts II-X and XII.[5]

## II.

Whether the objection to the Magistrate Judge's decision allowing plaintiffs to file a

second amended complaint has merit turns on whether Rule 15(c)'s relation back provision

operates to allow the added claims by Julio Vitullo, namely Counts V-X of the second amended

complaint. If not, then the added claims are time-barred by the FDCPA's one-year statute of

limitations, in which case the motion to amend should have been denied as futile. *See Perkins v.

United States*, 55 F.3d 910, 917 (4th Cir. 1995) (denying motion to amend complaint where

"proposed amendments could not withstand motion to dismiss"). On the other hand, if the added

claims relate back, they are not time-barred and the objection must be overruled.

A suit alleging a violation of the FDCPA must be brought within one year of the

---

[5] Mancini withdrew his motion to dismiss as to Count I of the second amended complaint. In addition, because plaintiffs no longer name Mancini as a defendant with respect to Count XIV, which corresponds to Count IX of the first amended complaint, Mancini's motion to dismiss this Count is moot.

violation's occurrence. *See* 15 U.S.C. § 1692k(d). The parties dispute when the violation occurred and the cause of action accrued. In this case, the violation occurred, and thus the action accrued, on Mancini's sending the notice of default to Julio Vitullo on June 16, 2008. Julio Vitullo argues that the date on which the action accrued is not ascertainable from the face of the pleadings because no facts establish when he knew, or should have known, that a violation had occurred. Further, Julio Vitullo contends that he in fact did not know of the violation until November 2009, and hence the statute of limitations did not begin to run until that time.

This argument misunderstands the governing law and is factually incorrect. The alleged FDCPA violation occurred, and the action accrued, when Mancini sent the letter on June 16, 2008, not when Julio Vitullo received the letter.[6] Moreover, it is immaterial that Julio Vitullo did not know the letter violated the FDCPA at the time he received the letter. Thus, unless they relate back, the FDCPA claims based on the June 16, 2008 letter would be time-barred because these claims were not asserted in the original or first amended complaints; rather they were pled for the first time in the second amended complaint, filed on December 13, 2009, a date well past the June 16, 2009 expiration of the one-year statute of limitations period.

Whether an amendment relates back to a previously filed pleading is governed by Rule 15(c)(1), Fed. R. Civ. P., which states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original

---

[6] *See* 15 U.S.C. § 1692k(d) (action accrues "within one year from the date on which the violation occurs"); *see also Mateti v. Activus Fin., LLC,* 2009 U.S. Dist. LEXIS 71971, at *18-*19 (D. Md. Aug. 14, 2009) (citing cases for proposition that action accrues on mailing of letter).

pleading."[7] In this circuit, it is well-settled that Rule 15 is chiefly concerned with ensuring (i) that there is a factual nexus between the amendments and the prior pleading, and (ii) that a defendant had sufficient notice of these new claims such that he will not suffer prejudice if the amendments are found to relate back.[8] As the Wright and Miller treatise on federal practice and procedure makes clear,

> [a]s long as defendant is fully apprised of a claim arising from specific conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense.

6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1501, at 154-55 (2d ed. 1990). In addition, where, as here, the amendment pleads a new cause of action, the amendment is not deemed prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).

These principles, applied here, compel the conclusion that the amendments relate back to the original complaint, and hence it is clear that the Magistrate Judge correctly granted Liliana Vitullo's Rule 15 motion. There is, to begin with, a clear factual nexus between Counts V-X of the second amended complaint and Count V of the original complaint. These Counts all plead FDCPA violations relating to the June 16, 2008 letter addressed to Julio Vitullo, and hence the

---

[7] An amendment also relates back in two other circumstances not at issue here: (i) when the law setting forth the applicable statute of limitations allows relation back, *see* Rule 15(c)(1)(A), Fed. R. Civ. P.; and (ii) when "the amendment changes the party or the naming party *against* whom a claim is asserted," *see* Rule 15(c)(1)(C), Fed. R. Civ. P. (emphasis added).

[8] *See, e.g., Goodman v. PraxAir, Inc.*, 494 F.3d 458, 469-70 (4th Cir. 2007) (en banc); *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 614 (4th Cir. 1980).

amendments "ar[i]se out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Rule 15(c)(1)(B), Fed. R. Civ. P. Additionally, because the June 16, 2008 letter was pled in the original complaint, Mancini did not lack notice of claims arising from that communication, and indeed Mancini makes no argument regarding prejudicial lack of notice; rather, Mancini contends only that the FDCPA statute of limitations makes any amendment futile. Yet, even were Mancini to argue that he is prejudiced by any delay in the assertion of the new FDCPA claims, this argument would fail because no discovery had been taken in this case at the time the Magistrate Judge granted Liliana Vitullo's motion to amend.[9] *See Laber*, 438 F.3d at 427 ("An amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.").

In sum, because the second amended complaint satisfies the requirements of Rule 15(c)(1)(B), Fed. R. Civ. P., Counts V-X of the second amended complaint relate back to the original complaint, and hence are not time-barred. Accordingly, Mancini's motion for reconsideration must be denied, and Counts V-X survive a motion to dismiss as to the FDCPA's one-year statute of limitations.

### III.

*A. Counts II-IV and VI-VIII*

Mancini seeks dismissal of Counts II-IV and VI-VIII, which allege that the June 2 and June 14 initial communications were deficient and that Mancini violated 15 U.S.C. § 1692g(a) in failing to send plaintiffs written notices within five days, as required by § 1692g(a). This section

---

[9] The joint discovery plan filed by the parties indicates that at the time Liliana Vitullo's motion to file a second amended complaint was granted, none of the discovery deadlines had passed.

provides, as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, *unless the following information is contained in the initial communication* or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt was owed;
>
> (3) a statement that the debt would be assumed valid by the debt collector if the debt was not disputed within thirty days;
>
> (4) a statement that if the consumer notified the debt collector within thirty days that the debt was disputed, the debt collector would obtain verification of the debt and forward that verification to the debtor; and
>
> (5) a statement that the debtor would provide, upon the consumer's request within thirty days, the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added). Although the statute does not specify whether the written notice must reconvey items of information included in the initial communication, § 1692g(a) must be sensibly read not to impose such a redundant requirement on debt collectors, as it would serve no statutory purpose.[10] Instead, a debt collector is sensibly required to send a written notice containing only the information omitted from the initial communication. This is so because the function of the § 1692g(a) notice is limited to curing any omissions in the initial communication. *See Salyer v. CACV of Colo., LLC*, 2005 U.S. Dist. LEXIS 14907, at *6 (W.D. Va. July 26, 2005) ("[T]he debt collector may violate the statute if it fails to include the proper information in the debt validation letter . . . and does not cure such a deficiency in five days . . . ."). This result is consistent with the FDCPA's stated purpose "to eliminate abusive debt collection practices by debt collectors," specifically in this case by providing debtors with certain

---

[10] *Cf. Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 533 (4th Cir. 2005) (rejecting petitioner's interpretation of 18 U.S.C. § 3624 because it advanced an "absurd result" clearly not intended by Congress); *Chesapeake Ranch Water Co. v. Bd. of Comm'rs*, 401 F.3d 274, 280 (4th Cir. 2004) (same).

information regarding their rights to validate and dispute their debts. 15 U.S.C. § 1692.

In evaluating claims alleging FDCPA violations, it is well and sensibly settled that courts apply a "least sophisticated consumer" standard. *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135-36 (4th Cir. 1996) (collecting cases). Notably, however, this standard does not allow "bizarre or idiosyncratic interpretations of collection notices" and thus "prevents liability . . . by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* Furthermore, whether an initial communication violates § 1692g(a) under the least sophisticated consumer test is guided by two additional principles. First, there is no requirement that a debt collector quote the language of § 1692g(a) verbatim.[11] Second, the communications must be examined as whole, not sentence-by-sentence, because the least sophisticated consumer standard "does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 298-99 (3d Cir. 2008).

In this case, neither plaintiff claims that the initial communication did not contain the amount of the debt pursuant to § 1692g(a)(1). Instead, Counts I-IV of the second amended complaint allege that the June 2, 2008 letter addressed to Liliana Vitullo—the "initial communication" between Liliana Vitullo and Mancini—did not contain the information specified in § 1692g(a)(2)-(5), and therefore Mancini was statutorily required to send a second written

---

[11] *See, e.g., Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 365-66 (2d Cir. 2005) (finding no violation although statutory language was not used verbatim); *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 484 (7th Cir. 1991) (finding no violation where "letters tracked the required statutory language *nearly* verbatim" (emphasis added)).

notice conveying this information within five days of sending the initial communication. Likewise, Counts V-VIII allege identical violations of § 1692g(a)(2)-(5) with respect to the June 16, 2008 letter addressed to Julio Vitullo—the "initial communication" between Julio Vitullo and Mancini—which is identical to the June 2, 2008 letter addressed to Liliana Vitullo in all pertinent respects.

Notably, Mancini does not move to dismiss Counts I and V, which allege that the initial communication failed to contain the name of the creditor to whom the debt was owed as specified by § 1692g(a)(2),[12] and an examination of the June 2, 2008 and June 16, 2008 letters, which are part of the record and are thus appropriately considered, reveals that this information is indeed absent. Instead, Mancini moves to dismiss only Counts II-IV and VI-VIII because, he argues, the initial communications at issue in those Counts do contain the information specified in § 1692g(a)(3)-(5), and hence Mancini argues that he was not required to send a second written notice containing this information within five days of sending the initial communication.

Mancini's argument is persuasive; Counts II-IV, which are identical to Counts VI-VIII, do not allege FDCPA violations because the initial communications—the June 2 and June 16 letters—do contain the information plaintiffs allege was absent from the initial communications, even from the viewpoint of the least sophisticated consumer. *See Nat'l Fin. Servs., Inc.*, 98 F.3d at 135-36. First, with respect to Counts II and VI, the initial communications clearly state that the debtors "have thirty (30) days after receipt of this notice to dispute the validity of this debt, or

---

[12] Mancini withdrew his motion to dismiss Count I prior to the filing of the second amended complaint and, consistent with this, Mancini did not move to dismiss Count I or V of the second amended complaint on the merits for failure to state a claim upon which relief can be granted. As discussed *supra*, however, Mancini does argue that Count V is time-barred.

any portion thereof, otherwise the debt will assume to be [sic] valid." This statement fully and effectively conveys the nature of plaintiffs' rights to dispute the debt. *See* 15 U.S.C. § 1692g(a)(3). In response, plaintiffs argue that the statement is incomprehensible and fails to state that it is the debt collector who assumes the debt to be valid. This argument is unavailing. While the statement contains a grammatical infelicity, this does not in any way obscure the statement's meaning. In addition, when read as a whole, the paragraph containing the statement makes clear that it is the debt collector who will assume the debt to be valid if it is not disputed, as it is the debt collector who is tasked with verifying a disputed debt.

Next, plaintiffs complain in Counts III and VII that the second sentence of the fifth paragraph in each letter—which reads, "[i]f you notice [sic] this office, in writing, within thirty (30) days that the debt or any portion thereof, is disputed"—fails to indicate *when* the thirty-day period begins. This argument plainly fails, as the preceding sentence clearly indicates that the thirty-day period to dispute the debt begins on receipt of the letter. *See id.* § 1692g(a)(4).

Finally, plaintiffs allege in Counts IV and VIII that the initial communication violates § 1692g(a)(5) because it adds the phrase, "if not already provided," to the sentence informing plaintiffs that the name and address of the original creditor will be provided on plaintiffs' timely request. Contrary to plaintiffs' contention, this sentence on its face is neither incomprehensible nor does it obfuscate plaintiffs' rights to request such information. Moreover, the sentence was neither contradicted by a separate statement that plaintiffs could not request the name and address of the original creditor, nor placed on the back of the validation notice, nor printed in smaller, less visible type. *See Nat'l Fin. Servs., Inc.*, 98 F.3d at 139 ("The notice also must not be overshadowed or contradicted by other messages."); *see also Miller v. Payco-Gen. Am. Credits,*

*Inc.*, 943 F.2d 482, 483-85 (4th Cir. 1991). Put simply, the least sophisticated consumer reading

Mancini's letters would plainly understand that he is entitled to request the name and address of

the original creditor from Mancini, and hence the June 2 and June 16 letters are not deficient in

this regard because the information was effectively conveyed. *See id.* at 484 (holding that a debt

collector "need not cease its collection efforts in order to abide by the statute, it simply needs to

convey effectively the validation notice without contradicting it").

Accordingly, because the statements made in the initial communication satisfy the

requirements of 15 U.S.C. § 1692g(a)(3)-(5), Counts II-IV and VI-VIII must be dismissed.

*B. Counts IX-X*

In Counts IX-X, Julio Vitullo complains that Mancini violated 15 U.S.C. § 1692e by

falsely stating in the June 16, 2008 letter (i) that Julio Vitullo signed a note secured by a deed of

trust on the Capon Bridge property, and (ii) that Julio Vitullo was in default on this note.

According to the second amended complaint, these statements were false because Julio Vitullo

signed neither the note nor the deed of trust.

The FDCPA provides a cause of action where a debt collector "use[s] any false,

deceptive, or misleading representation or means in connection with the collection of any debt,"

and enumerates a nonexhaustive list of actionable conduct. 15 U.S.C. § 1692e. Importantly, the

Fourth Circuit has held that "the test is the capacity of the statement to mislead; evidence of

actual deception is unnecessary." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 139; *see also Neild v.*

*Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006) ("[A] plaintiff asserting a

claim under § 1692e need not prove actual reliance on a false representation.").

The facts pled in the second amended complaint, assumed to be true for the purpose of

-13-

considering the motions at bar, adequately state a claim upon which relief can be granted. Specifically, the statement in the June 16, 2008 letter that Julio Vitullo was in default on the note is a "false representation of . . . the character . . . or legal status of a debt." 15 U.S.C. § 1692e(2)(A). Moreover, the statement that Julio Vitullo's election not to cure the default will result in "accelerate[d] payments on the note and, if necessary . . . foreclosure" is a "threat to take any action that cannot legally be taken." *Id.* § 1692e(5).

In response, Mancini argues that the June 16, 2008 letter was not deceptive because Julio Vitullo knew that he had signed neither the note nor the deed of trust, and therefore knew that he was in fact not a debtor. This argument is foreclosed by the FDCPA's definition of "consumer." The statute protects both those persons who are obligated to pay a debt, and importantly also those persons who are *"allegedly* obligated to pay any debt." *Id.* § 1692a(3) (emphasis added). Here, the communication makes clear that Julio Vitullo is "allegedly obligated" to pay the debt secured by the Capon Bridge property pursuant to the deed of trust. Mancini's argument would impermissibly read this language out of the statute. It does not matter that Julio Vitullo knew he was not a signatory to the note and thus was not liable for the debt. Instead, what matters is that the letter falsely states that he is liable on the note and Julio Vitullo could plausibly believe that a debt collector considers that he, Julio Vitullo, is liable on the note and is seeking to collect the debt. Thus, the debt collector's statement in the initial communication that Julio Vitullo is liable under the note is a false statement that is actionable under the FDCPA. Accordingly, Julio Vitullo has pled a plausible violation of § 1692e arising from the June 16, 2008 letter, and thus Mancini's motion to dismiss Counts IX-X must be denied.

C. *Count XII*

-14-

Count XII alleges that Mancini violated the FDCPA's cease communications provisions by communicating directly with Liliana Vitullo on August 29, 2008, despite knowing that she was represented by an attorney with respect to such debt. Specifically, 15 U.S.C. § 1692c(a)(2) states that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2). This Count fails to state a claim for which relief can be granted because a creditor's "pursuit of legal remedies, such as non-judicial foreclosure statutes, does not violate the cease communications rule of the FDCPA." *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1210-11 (D. Or. 2002). In *Hulse*, although the defendants there knew that the debtor was represented by counsel, the defendants' sending notice of a trustee's sale directly to the debtor was found not to violate the FDCPA cease communications provisions because such notice was required to be sent by state law. This sensible result follows from the fact that the FDCPA does not prohibit debt collectors from foreclosing on debtors' properties pursuant to state law, and nothing in the FDCPA authorizes debt collectors to violate or fail to comply with state foreclosure laws. *See id.* at 1210-11 (quoting Federal Trade Commission report, which states that the "cease communications provision in section 1692c(a) of the FDCPA does not prevent collectors or creditors from filing suit against the consumer," and thus would not foreclose pursuit of state foreclosure remedies (quotation marks omitted)).

Here, as in *Hulse*, the notice of acceleration and foreclosure was sent to the address appearing on the deed of trust, as directed by state law. Specifically, West Virginia Code § 38-1-4 states that where, as here, a property is to be sold pursuant to a deed of trust, the trustee shall

publish a notice of the trustee's sale and, "[i]n all cases, a copy of such [publication] notice shall be served on the grantor in such trust deed, or his agent or personal representative." W. Va. Code § 38-1-4. Importantly, the statute requires that the notice be "directed to the address shown by the grantors on the deed of trust or such other address given to the *beneficiary* of said trust deed or said beneficiary's agent or assignee in writing by the said grantor subsequent to the execution and delivery of the trust deed." *Id.* (emphasis added). Notably, the June 23, 2008 cease and desist letter sent by Liliana Vitullo's counsel to Mancini does not serve as a valid change of address request pursuant to West Virginia law because the letter was directed neither to the beneficiary, IndyMac, nor to the beneficiary's agent. Importantly, the second amended complaint does not allege, nor do the various letters attached to the parties' pleadings indicate, that Mancini is IndyMac's agent; rather, the June 8, 2008 and June 16, 2008 letters make clear that Mancini represents the current noteholder, not IndyMac as beneficiary, and the August 29, 2008 letter states that Mancini is acting on behalf of the trustees at the noteholder's direction. Accordingly, because Mancini was required by West Virginia law to send the notice of acceleration and foreclosure to the grantor's address, and because Liliana Vitullo did not provide the beneficiary or the beneficiary's agent with an alternate mailing address pursuant to state law, the August 29, 2008 letter does not violate § 1692c(a)(2).[13]

## IV.

In sum, because there is a clear factual nexus between Counts V-X of the second amended complaint and Count V of the original complaint, Counts V-X of the second amended

---

[13] It is worth noting that Liliana Vitullo's cease and desist letter specifically advises Mancini that he "[is] not excused from sending any communication required by law."

complaint relate back to the filing of the original complaint under Rule 15(c)(1)(B), Fed. R. Civ. P., and are not time-barred. Accordingly, the Magistrate Judge correctly granted Liliana Vitullo's motion to file a second amended complaint, and thus Mancini's objection to the Magistrate Judge's ruling must be overruled.

Additionally, because Mancini's initial communication with plaintiffs contained some—although not all—of the information enumerated in § 1692g(a), Mancini was not required within five days to send a written communication to plaintiffs containing the already-conveyed information, and thus Counts II-IV and VI-VIII must be dismissed. Counts IX-X of the second amended complaint survive a motion to dismiss because the allegedly false statements plausibly have the capacity to mislead. Finally, Count XII must be dismissed because the FDCPA's cease communications provisions are not violated where a communication is sent directly to the debtor as required by state law.

An appropriate Order will issue.

Alexandria, Virginia
January 26, 2010

T. S. Ellis, III
United States District Judge